673 N.W.2d 438 (2003)
BIRCHWOOD MANOR, INC., Plaintiff-Appellant,
v.
COMMISSIONER OF REVENUE, Defendant-Appellee.
Health Care and Retirement Corporation, Plaintiff-Appellant,
v.
Commissioner of Revenue, Defendant-Appellee.
Knollview Manor, Inc., Plaintiff-Appellant,
v.
Commissioner of Revenue, Defendant-Appellee.
Docket Nos. 236646, 236698, 236699.
Court of Appeals of Michigan.
Released September 23, 2003, at 9:25 a.m.
Vacated October 15, 2003.
Released for Publication November 26, 2003.
*439 Before: BANDSTRA, P.J., and GAGE and SCHUETTE, JJ.

ORDER
Birchwood Manor, Inc. v. Commissioner of Revenue, Docket No. 236646. Health Care and Retirement Corporation v. Commissioner of Revenue, Docket No. 236698. Knollview Manor, Inc. v. Commissioner of Revenue, Docket No. 236699. The Court orders that a special panel shall be convened pursuant to MCR 7.215(J) to resolve the conflict between these consolidated cases and CompuPharm-LTC v. Dep't. of Treasury, 225 Mich.App. 274, 570 N.W.2d 476 (1997).
The Court further orders that the opinion in these consolidated cases released on September 23, 2003, is vacated. MCR 7.215(J)(5).
The appellants may file a supplemental brief within 21 days of the Clerk's certification of this order. Appellee may file a supplemental brief within 21 days of service of appellants' brief. Nine copies must be filed with the Clerk of the Court.
GAGE, J.
Petitioners Birchwood Manor, Inc., Health Care and Retirement Corporation, and Knollview Manor, Inc., appeal as of right the order of the Michigan Tax Tribunal denying petitioners' motion for summary disposition and granting summary disposition to respondent Commissioner of Revenue in these consolidated cases and appeals, which concern the use tax treatment of over-the-counter medications petitioners purchased for their nursing home residents. We find our analysis in this case is limited because we are bound by this Court's decision in CompuPharm-LTC v. Dep't. of Treasury, 225 Mich.App. 274, 570 N.W.2d 476 (1997), which held that nonlegend drugs dispensed to nursing home residents by licensed pharmacists pursuant to physicians' written prescriptions were not exempt from sales tax. MCR 7.215(J)(1). If we were not bound by CompuPharm, we would find that non-legend drugs dispensed to nursing home residents by licensed pharmacists pursuant to physicians' written prescriptions are exempt from use tax. Therefore, were it not for CompuPharm, we would remand this case to the Tax Tribunal for further analysis *440 regarding whether the drugs at issue were dispensed pursuant to written prescriptions. However, because we are bound by CompuPharm, we affirm the order of the Tax Tribunal granting respondent summary disposition.

I

A
Respondent assessed use tax against each petitioner following separate audits. At least a portion of each assessment related to each petitioner's purchase of nonlegend,[1] or over-the-counter, drugs for use in its nursing homes. Each petitioner protested the assessments, claiming some of the medications qualified for the use tax exemption for prescription drugs, M.C.L. § 205.94d, because they were dispensed by a licensed pharmacist pursuant to a prescription written by a physician for a designated resident.[2] After a respondent upheld the tax assessment, petitioners appealed to the Tax Tribunal.
Petitioners thereafter filed a motion for summary disposition and respondent filed a cross-motion for summary disposition. In December 1997, the tribunal granted petitioners' motion to hold the case in abeyance pending the outcome of CompuPharm, supra. In May 1999, the current cases were removed from abeyance and the tribunal granted respondent's cross-motion for summary disposition. In granting respondent summary disposition, the tribunal followed CompuPharm, ruling that the nonlegend drugs petitioners purchased were not exempt from use tax under M.C.L. § 205.94d.

B
This Court's review of Tax Tribunal decisions is very limited. Michigan Milk Producers Ass'n. v. Dep't. of Treasury, 242 Mich.App. 486, 490, 618 N.W.2d 917 (2000). On appeal, absent a claim of fraud, this Court can determine only whether the tribunal committed an error of law or adopted a wrong legal principle. Id.; Michigan Bell Telephone Co. v. Dep't. of Treasury, 229 Mich.App. 200, 206, 581 N.W.2d 770 (1998). Further, the tribunal's factual findings will not be disturbed as long as they are supported by competent, material, and substantial evidence on the whole record. Michigan Milk Producers, supra at 490-491, 618 N.W.2d 917; Canterbury Health Care, Inc. v. Dep't. of Treasury, 220 Mich.App. 23, 28, 558 N.W.2d 444 (1996).

II
This case requires us to analyze the use tax exemption for prescription drugs provided in M.C.L. § 205.94d. The precise question petitioners request be decided is whether nonlegend drugs dispensed to nursing home residents by licensed pharmacists pursuant to physicians' written prescriptions are exempt from use tax. Petitioners assert that although the drugs at issue in this case could be purchased by the public over the counter, federal and state Medicaid and Medicare regulations *441 require that nursing home residents receive drugs only pursuant to a written prescription. However, this issue, as it relates to the sales tax, was decided by a panel of this Court in CompuPharm, supra.

A
The Michigan Constitution exempts "prescription drugs for human use" from sales and use tax. Const. 1963, art. 9, § 8. This provision provides, "No sales tax or use tax shall be charged or collected from and after January 1, 1975 on the sale or use of prescription drugs for human use...." Id. However, the Constitution does not define "prescription drugs for human use."
M.C.L. § 205.94d exempts prescription drugs from use tax. The statute defines "prescription drug for human use" as follows:
"Prescription drug for human use" means insulin or a drug dispensed by a licensed pharmacist pursuant to a written prescription prescribed by a licensed physician or other health professional as defined in section 21005 of the public health code [MCL 333.21005] for the use of a designated person, or oxygen dispensed pursuant to a written prescription or order issued by a licensed physician or other health professional.... [MCL 205.94d(2).]
Petitioners assert the nonlegend drugs they purchased qualified for exemption from use tax because they met the statutory definition of prescription drugs, despite their over-the-counter nature. Specifically, petitioners contend the items were (1) drugs, (2) dispensed by a licensed pharmacist, (3) pursuant to prescriptions written by licensed physicians or other health professionals for the use of designated persons. Therefore, petitioners urge that the tribunal committed an error of law by failing to apply the statutory definition of prescription drugs.

B
In CompuPharm, supra, at 279-280, 570 N.W.2d 476, this Court ruled that nonlegend drugs dispensed to nursing home residents do not qualify for tax exemption, even if a licensed pharmacist dispenses them pursuant to a written prescription. CompuPharm presented facts similar to those in the instant case. CompuPharm, a pharmaceutical company, argued its sales of over-the-counter drugs to nursing home residents were exempt from sales tax because the drugs were dispensed by licensed pharmacists to fill prescriptions written by doctors. Id. at 275-276, 570 N.W.2d 476. In other words, CompuPharm argued for a transactional approach, under which the method by which a drug is distributed is key to its status. The company premised its argument on federal Medicaid regulations that require all medications given to nursing home patients be dispensed only pursuant to physicians' orders. Id. at 275-276, 570 N.W.2d 476.
The panel rejected CompuPharm's argument. In rejecting the argument, the panel relied on this Court's decision in Syntex Laboratories, Inc. v. Dep't. of Treasury, 188 Mich.App. 383, 470 N.W.2d 665 (1991), finding that this Court had rejected a transactional approach in Syntex. Relying on Syntex, the CompuPharm panel focused on the nature of the nonlegend drugs distributed to nursing home residents rather than their means of distribution. CompuPharm, supra at 279-280, 570 N.W.2d 476. Because the drugs were available without a prescription, the panel found they were not exempt from tax. Id. The panel explained:
In the instant case, adopting petitioner's interpretation [a transactional approach] would potentially confer prescription *442 drug (and sales tax-exempt) status on anything that could reasonably be characterized as a drug, rather than merely on "legend" drugs, because the only requirements would be that the substance be a drug and that it be prescribable. Such an interpretation does not comport with the commonly understood meaning of "prescription drug" as found in Syntex. It would also open the door to potential abuse by providing a method of avoiding the payment of sales tax on otherwise taxable items. [Id.]
The panel also rejected CompuPharm's argument that Medicaid regulations requiring the drugs to be dispensed pursuant to a written prescription conferred prescription drug status. Id. at 280, 570 N.W.2d 476. The panel concluded, "[T]he purpose of this requirement is `to ensure that medical care is being provided in accordance with each recipient's individualized medical care plan.' Thus, the requirement exists for recordkeeping and oversight purposes that are unrelated to the intent of the constitutional exemption from taxation." Id.
Although the present case involves use tax rather than sales tax, this Court has noted the use tax act and the sales tax act define prescription drugs nearly identically. Id. at 278, 570 N.W.2d 476. We find that because the instant case presents facts and issues nearly identical to CompuPharm, CompuPharm applies to this case. Therefore, we are bound by CompuPharm's holding that nonlegend drugs dispensed to nursing home residents do not qualify for tax exemption, even if a licensed pharmacist dispenses them pursuant to a physician's written prescription.
Petitioners' attempts to distinguish this case from CompuPharm are without merit. Petitioners claim that CompuPharm concerned a tax on the company that sold drugs, while this case involves a tax on the ultimate usernamely elderly, indigent, and disabled nursing home residents. However, petitioners mischaracterize the facts of this case. Here, respondent assessed the use tax against the nursing home operators, not the residents. We note, however, that the consumer likely would bear the cost of any tax on drugs, regardless of against whom the actual assessment is made. See Syntex, supra at 390-391, 470 N.W.2d 665. Thus, petitioners' arguments do not provide a basis for not applying CompuPharm in this case.

C
The Tax Tribunal is bound under the rule of stare decisis to follow this Court's published decisions. MCR 7.215(C). Petitioners have presented no persuasive reasons for distinguishing CompuPharm from the instant case. Therefore, we are bound to find that the tribunal did not err in relying on CompuPharm to conclude that the nonlegend drugs at issue were not exempt from use tax, and we must affirm the decision of the Tax Tribunal.

III
Petitioners, however, assert that this Court in CompuPharm misapplied Syntex and inappropriately usurped legislative authority by construing a clear, unambiguous statute; therefore, petitioners urge this Court to indicate its disagreement with CompuPharm pursuant to MCR 7.215(J)(2) and convene a special panel pursuant to MCR 7.215(J)(3). While we believe petitioners mischaracterize the CompuPharm and Syntex decisions in making their argument, we nonetheless agree that the CompuPharm panel erred in its application of the Syntex holding. Because CompuPharm was decided after November 1, 1990, we must follow its rule of law, MCR 7.215(J)(1); however, we *443 stress our disagreement with the decision, MCR 7.215(J)(2).

A
In Syntex, the Department of Treasury attempted to impose use tax on samples of legend drugs that Syntex, a drug manufacturer, distributed to physicians. Syntex, supra at 384, 470 N.W.2d 665. The department argued the drugs were not "prescription drugs," and were therefore subject to use tax because they were not dispensed by a pharmacist pursuant to a physician's prescription written for a designated consumer. Id. at 388-389, 470 N.W.2d 665. A panel of this Court agreed the drugs did not meet the statutory definition because they were not dispensed by a pharmacist to fill a physician's written prescription. Id. at 389, 470 N.W.2d 665. The panel then turned to the constitutional exemption, and determined that the commonly understood meaning of "prescription drugs" focused on whether a drug could be bought only with a physician's prescription, not on how the drug was distributed. Id. at 389-390, 470 N.W.2d 665. The panel also noted the Public Health Code defined "prescription drug" to include "`[a] drug designated by the board as one which may only be dispensed pursuant to a prescription.'" Id. at 390, 470 N.W.2d 665, quoting M.C.L. § 333.17708(4)(c). The panel concluded, "These definitions focus on the nature of the drug, instead of on whether the drug has actually been dispensed pursuant to a prescription." Syntex, supra at 389, 470 N.W.2d 665. Therefore, the panel held the drug samples were "prescription drugs" and that imposing a use tax on them violated the Constitution. Id. at 391, 470 N.W.2d 665.
CompuPharm, however, presented the converse situation from that in Syntex. While in Syntex, supra at 388-389, 470 N.W.2d 665, the Department of Treasury asserted legend drugs were subject to taxation because they did not meet the statutory definition, this Court agreed the drugs were not exempt under M.C.L. § 205.94d, but found the drugs exempt under the constitutional provision. Syntex, supra at 391, 470 N.W.2d 665. By contrast, in CompuPharm, supra at 275-276, 570 N.W.2d 476, the taxpayer argued its nonlegend drugs were exempt from taxation because they met the statutory definition. This Court, relying on Syntex, concluded the drugs were not tax-exempt. Id. at 279-280, 470 N.W.2d 665.

B
The petitioner in CompuPharm based its argument on the statutory exemption as well as the constitutional exemption. Id. at 275, 570 N.W.2d 476. Apparently, the CompuPharm panel assumed the Syntex analysis applied to both: "The definition of `prescription drug' set forth in the Use Tax Act and construed in Syntex...." Id. at 278, 470 N.W.2d 665 (emphasis added). However, a closer reading of Syntex shows that the ruling applies to only the constitutional provision. Syntex, supra at 389-391, 470 N.W.2d 665. The Syntex panel addressed M.C.L. § 205.94d only to note that the drugs did not meet the statutory definition of "prescription drug." Most notably, contrary to the CompuPharm panel's rejection of the transactional approach, the Syntex panel adopted a transactional approach in making its determination: "The drug samples do not satisfy the Use Tax Act definition because they were not dispensed by a pharmacist to fill a prescription prescribed by a physician." Syntex, supra at 389, 470 N.W.2d 665 (emphasis added). This implies the drugs would have been exempt had they satisfied these requirements, and underscores that the panel rejected the transactional approach of the *444 statute only with respect to determining the meaning of "prescription drug" for the purpose of the constitutional provision.

C
The differing goals of statutory interpretation and constitutional interpretation indicate that Syntex's analysis cannot simply be transferred to the statutory definition. The goal of either type of interpretation is to ascertain and give effect to the purpose and intent of the provision. Frankenmuth Mut. Ins. Co. v. Marlette Homes, Inc., 456 Mich. 511, 515, 573 N.W.2d 611 (1998); White v. Ann Arbor, 406 Mich. 554, 562, 281 N.W.2d 283 (1979). However, when interpreting a statute, one aims to determine the intent of the legislature that passed the provision, and the plain and ordinary meaning of the language governs. Frankenmuth, supra at 515, 573 N.W.2d 611; Toth v. AutoAlliance Int'l. Inc., 246 Mich.App. 732, 737, 635 N.W.2d 62 (2001). By contrast, constitutional interpretation aims to determine the intent of the people who adopted the provision, and the rule of common understanding applies. Straus v. Governor, 459 Mich. 526, 533, 592 N.W.2d 53 (1999). Importantly, constitutional provisions are not subject to statutory construction rules. Traverse City School Dist. v. Attorney General, 384 Mich. 390, 405, 185 N.W.2d 9 (1971); Michigan United Conservation Clubs v. Dep't. of Treasury, 239 Mich.App. 70, 76, 608 N.W.2d 141 (1999).
The Syntex interpretation of "prescription drug" cannot prevail over the meaning the Legislature gave that term unless the statute is unconstitutional. Statutes, however, are presumed constitutional, and that presumption is especially strong regarding tax legislation. Ammex, Inc. v. Dep't. of Treasury, 237 Mich.App. 455, 468, 603 N.W.2d 308 (1999). This Court must construe a statute as constitutional unless its unconstitutionality is clearly apparent. McDougall v. Schanz, 461 Mich. 15, 24, 597 N.W.2d 148 (1999). If necessary, this Court must give a statute a narrowing construction to render it constitutional if such a construction is possible without harming the purpose of the Legislature. Thompson v. Merritt, 192 Mich.App. 412, 424, 481 N.W.2d 735 (1991).
In Syntex, supra at 389 n. 1, 470 N.W.2d 665, citing OAG 1979-1980, No. 5601, p. 486 (November 30, 1979), the Court noted that the Department of Treasury asserted that if the statutory definition of "prescription drug" restricted the constitutional use and sales tax exemption, it violated the Constitution. By contrast, however, petitioners' proposed interpretation of M.C.L. § 205.94d in this case broadens the constitutional exemption. Under this Court's interpretation of the constitutional provision, only legend drugs qualify for tax exemption. Syntex, supra at 389-390, 470 N.W.2d 665. However, petitioners' interpretation would exempt any drug dispensed by a pharmacist pursuant to a physician's prescription. See CompuPharm, supra at 279-280, 570 N.W.2d 476. The statute, therefore, broadens the constitutional right and, thus, is not unconstitutional.
Although the statutory definition can be harmonized with the constitutional provision, respondent argues the Legislature has indicated the Syntex analysis applies to the statutory definitionthat is, that the nature of the drug governs its tax status for purposes of the statutory definition. Before Syntex, M.C.L. § 205.94d(2) defined "prescription drug for human use" as "insulin or a drug dispensed by a licensed pharmacist to fill an individual prescription prescribed by a licensed physician or other licensed practitioner of the healing arts solely for the use of a designated person." After this *445 Court decided Syntex, the Legislature amended the statute to its current form, which is substantially similar, but expressly exempts "oxygen dispensed pursuant to a written prescription or order issued by a licensed physician or other health professional...." 1992 PA 267, M.C.L. § 205.94d(2). Respondent asserts that the addition of oxygen signals the Legislature's approval of Syntex because the amended language exempts oxygen only if it is dispensed pursuant to a prescription. According to respondent, if petitioners' interpretation of the statutory definition (a transactional approach) were correct, the language requiring distribution pursuant to a prescription would be superfluous.
While respondent's argument represents one possible explanation for the Legislature's specific exemption of oxygen, another possibility existsoxygen would require a specific exemption if it is not considered a drug. Petitioners' interpretation would exempt all drugs issued pursuant to prescription. If oxygen is not considered a drug, then it would not satisfy petitioners' interpretation of the statute, and the requirement that it be prescribed by a doctor would not be superfluous.
Although M.C.L. § 205.94d does not define "drug," the Public Health Code, M.C.L. § 333.1101 et seq., defines "drug" as "a substance intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in human beings or animals...." M.C.L. § 333.7105(7). Oxygen arguably could be used to mitigate or treat disease; however, the legislative history of the statutory amendment indicates that the status of oxygen as a drug has been questioned. House Legislative Analysis, HB 6087 and 6088, September 24, 1992. According to the analysis, the Commissioner of Revenue questioned whether oxygen was a drug, despite an earlier Attorney General's opinion that it is. Id. Although legislative history is "a generally unpersuasive tool of statutory construction," Frank W. Lynch & Co. v. Flex Technologies, Inc., 463 Mich. 578, 587, 624 N.W.2d 180 (2001), it suggests the language requiring a prescription may have been necessary to exempt oxygen from use tax even under petitioners' interpretation.[3]
The statute provides that a prescription drug is a drug prescribed by a physician and dispensed by a pharmacist for a designated person. M.C.L. § 205.94d. Arguably, the meaning of the term "drug" is ambiguous, but the parties do not dispute that the items petitioners seek to exempt from taxation are drugs. The remainder of the definition, concerning the distribution of the drug pursuant to a prescription, does not lend itself to more than one interpretation.[4] Importantly, it does not lend itself to the meaning of "prescription drug" derived in Syntex. The language states that prescription drugs are those dispensed by a pharmacist to fill a prescription. It cannot be fairly interpreted as including only those drugs that must be distributed by a pharmacist. If the Legislature had intended the latter meaning, it could have included language to that effectfor instance, "insulin or a drug required *446 to be dispensed by a licensed pharmacist." Accordingly, we conclude that judicial construction of this statute is neither necessary nor appropriate in this case. Thus, the Syntex analysis is irrelevant to the application of the statute, and under a strict reading of the statute, a prescription drug is a drug dispensed by a licensed pharmacist to fill a prescription written by a physician, regardless of whether the drug is required to be dispensed pursuant to a prescription.

D
We note that the CompuPharm panel addressed certain policy concerns that counsel raised against adopting this broader interpretation of "prescription drugs." CompuPharm, supra at 279-280, 570 N.W.2d 476. First, the panel noted that CompuPharm's interpretation would encompass a broad range of items in the tax exemption. Id. Second, the panel concluded that the federal and state regulations requiring that all medications be dispensed to nursing home residents pursuant to a doctor's order served recordkeeping and oversight purposes unrelated to the intent of exempting prescription drugs from taxation. Id. at 280, 570 N.W.2d 476.
We do not dispute that these are valid concerns. However, they represent policy considerations for the Legislature, not this Court, to weigh. In interpreting a statute, this Court may not impose a construction based on a different policy decision than the Legislature has chosen. Robertson v. DaimlerChrysler Corp., 465 Mich. 732, 752, 641 N.W.2d 567 (2002); see also City of Lansing v. Lansing Twp., 356 Mich. 641, 648, 97 N.W.2d 804 (1959) ("`The duty of the Court is to interpret the statute as we find it. The wisdom of the provision in question in the form in which it was enacted is a matter of legislative responsibility with which courts may not interfere.'") (citation omitted). In this case, the neediest population is forced to bear the cost of professional services (i.e., to obtain prescriptions) in order to receive what ordinary citizens can buy over the counter. While the ordinary person does not pay tax on a prescription drug, the nursing home residents, in effect, are forced to pay more, through the assessment of the tax on the operator of the nursing home, for drugs they can obtain only pursuant to a prescription. Although we should not be concerned with policy considerations, perhaps this explains why the Legislature passed the statute containing the specific language that it did.

E
In summary, the Tax Tribunal correctly applied binding precedent in deciding the drugs at issue were not exempt from use tax. Under the rule of stare decisis, this Court is bound to follow its published opinion in CompuPharm and, therefore, must affirm the tribunal's ruling regarding this issue. MCR 7.215(J)(1). However, our disagreement with the CompuPharm decision is apparent.

IV
Although we are bound by CompuPharm, we find it necessary to address whether the drugs at issue in this case would qualify for exemption under our analysis of the statute. In its decision, the Tax Tribunal found that "non-legend drugs are not obtained upon written prescription by a physician but instead are ordered by the physician dispensing the non-legend drug." Petitioners argue that the tribunal erred in this finding and contend that the nonlegend drugs at issue in this case were dispensed pursuant to prescriptions, and thus, meet the statutory definition.
To qualify as a "prescription drug for human use" under M.C.L. § 205.94d(2), an *447 item must, among other things, be "dispensed by a licensed pharmacist pursuant to a written prescription prescribed by a licensed physician or other health professional...." Petitioners concede "the drugs were ordered by the physicians," but assert the drugs could be dispensed only by a pharmacist pursuant to a written prescription under Michigan and federal law. Because petitioners complied with these regulations, they assert that the drugs were prescribed by licensed physicians and not merely ordered. Petitioners, however, mischaracterize the federal and state regulations governing Medicare and Medicaid reimbursements to nursing homes when they claim drugs must be dispensed to residents only pursuant to physicians' prescriptions. The term "prescription" does not appear in any of the regulations petitioners cite for this proposition. 42 C.F.R. § 483.40; 42 C.F.R. § 483.60; 2001 AC, R 325.20903. Instead, the regulations require that doctors sign and date all orders for nursing home residents, with limited exceptions. 42 C.F.R. § 483.40(b)(3). In addition, nursing homes must provide pharmaceutical services and employ or obtain the services of a licensed pharmacist. 42 C.F.R. § 483.60. Finally, state regulations mandate that nursing homes administer medications only in accordance with the attending physician's order. 2001 AC, R 325.20903(1). Further, the order can be either written or verbal. Id. Therefore, petitioners' assertion that they complied with these regulations does not necessarily support their claim that the drugs were dispensed pursuant to written prescriptions.
However, the difference in the terms "order" and "prescription" in this case appears to be a distinction without a difference. It does not appear that the tribunal actually analyzed the specific facts of this case to find whether the orders were the equivalent of prescriptions. The record here reflects that the physicians' orders were either mailed or faxed to pharmacies to be filled by pharmacists The drugs were then sent back to the nursing homes in boxes labeled for each resident. Therefore, it appears that specific written "orders" for particular drugs to be dispensed to particular residents were sent to pharmacies and filled by pharmacists. Importantly, petitioners contend that only the drugs for which a written "order" was filled are exempt from tax, petitioners acknowledge that those nonlegend drugs that were purchased for "house supplies" are subject to use tax. We fail to see the distinction in this case between a written order filled by a pharmacist and a written prescription.[5] However, on the basis of this record, we are unable to conclusively determine that the drugs at issue were prescribed by written prescriptions from physicians.
Because the Tax Tribunal failed to fully analyze this issue in its opinion and because we are unable to make a conclusive determination on this record with regard to this issue, were we not bound by CompuPharm to affirm the tribunal's decision, we would remand to the tribunal for a determination whether the nonlegend drugs dispensed by the pharmacists to the particular residents were dispensed pursuant to written orders by physicians and whether the written orders were the equivalent of written prescriptions.

V
In summary, we find the Tax Tribunal was bound to follow CompuPharm, supra, *448 and therefore properly granted summary disposition to respondent. We note our disagreement with CompuPharm and, were we not bound by CompuPharm, we would hold that under M.C.L. § 205.94d, a drug, whether legend or nonlegend, dispensed by a pharmacist pursuant to a written prescription prescribed by a licensed physician is a prescription drug for purposes of exemption from use tax. Thus, as just explained, the outcome of this appeal would changewe would remand rather than affirm. Because of our disagreement with CompuPharm, we recommend that this case be submitted to a special conflict panel pursuant to MCR 7.215(J)(3).
Affirmed.
NOTES
[1] Federal law requires certain drugs to bear a legend indicating they may be dispensed only by prescription. 21 CFR 201.100(b). These drugs are referred to as "legend drugs." When the parties filed their briefs in this case, the labels of these drugs were required to state, "Caution: Federal law prohibits dispensing without prescription." Effective April 2, 2002, the labels must now state, "Rx only." 67 FR 4904, 4906. "Nonlegend" drugs are those drugs that do not require this label.
[2] Petitioners acknowledge that some of the nonlegend drugs were purchased to be used as "house supplies" and were not ordered by a physician for a particular resident. Petitioners do not dispute that these "house supplies" are subject to use tax.
[3] Respondent also notes that the Legislature did not amend the statute to exempt any drug prescribed by a physician, but instead limited the exemption to oxygen. However, the statutory definition already defines "prescription drug for human use" to include all drugs dispensed by a pharmacist pursuant to a physician's prescription. M.C.L. § 205.94d(2). Thus, this amendment was unnecessary.
[4] We note that the term "prescription" may be ambiguous and lend itself to more than one meaning. See part IV later in this opinion. However, resolution of the ambiguity of this term at this point in the discussion is unnecessary.
[5] The term prescription is defined as "a written direction by a physician for the preparation and use of a medicine or remedy." Random House Webster's College Dictionary (1997), p. 1029.